Denise Murray v. Kindred Nursing Centers West, LLC. Mr. Loringer, before you argue, I would like to tell everyone that the court will take a recess after this argument. We have a different panel hearing, at least as to one person, hearing the Franklin cases. There will be a recess at the end of this. The court will confer on the earlier cases, and then the court will resume. Thank you, Your Honor. May it please the court, Guy Loringer on behalf of the appellant Denise Murray. The salient issue with regard to the retaliation cases, whether there's a triable issue of fact regarding pretext. With regard to that, we believe that we presented much evidence which in totality would allow a trier of fact to reasonably infer that the stated reason, drug diversion, is a pretext. The evidence begins with Ms. Murray's own testimony in which she has adamantly denied diverting drugs. But I thought that her termination was for suspected drug diversion. Your Honor, no. The defense and Kindred has tried to back away to that position. Right. But initially, all the evidence establishes that she was fired for drug diversion, not suspicion of drug diversion. Right. And that is important. Is there a real difference between the two? Well, it could be the difference between suspected of a crime and actually committing a crime. But either way, the employer certainly has a right to take, probably a responsibility to take some action. Well, if it's undisputed as a matter of law that she did divert drugs, they certainly may, as opposed to with suspicion. No, no, but no one's talking about undisputed. We're talking about the reasonable, you know, views of a manager of a nursing home. You know, and I'm struggling. I mean, my understanding of the case, which may be imperfect at this point, is that here we've got a nursing home manager who gets a complaint from a patient, which gives her a reason to suspect a drug diversion, who makes an immediate check of the records, as she should do, finds information in the records which she says, and I realize you may argue about this, but which she says convinces her that there are some irregularities, terminates Miss Murray on that basis, and then in a subsequent independent proceeding, the main division of nursing or the nursing board, whatever the agency is called, enters into a, what I inartistically call a plea bargain, where Miss Murray admits that she is guilty of documentation errors regarding the dispensation of narcotic drugs. Do I have the facts wrong? I understand there may be other facts that cut you away, but do I have those facts wrong? Two factors, Your Honor. First, it wasn't a patient who complained. It was another nurse who brought it to the attention of the director of nursing, Guptill. And with regard to the board of nursing, the other nurse did it on the basis of what she had, of a complaint given to her by resident number one, but the person we're calling resident number one. No, Your Honor. The oncoming nurse, Nurse Gage, viewed and noticed that the patient had been given Oxy, and she brought that to the attention of the director of nursing, Guptill. And from there, Guptill began an investigation. So it was initiated by Nurse Gage, who was a friend of the other nurse, Doobie, who we accuse, or we suspect, of diverting the drugs. With regard to the board of nursing, the only agreement is that there were certain entries which were illegible. And that is correct. In fact, half the nurses there had illegible writings. I want to go back to Judge Celia's initial question, which is, for you, it is very important, the distinction between suspected drug diversion and proven drug diversion. In situations like this, it's not going to be very common that the employer has actual proof of drug diversion. But the employer may well have strong suspicions sufficient to warrant disciplinary action or a separation. Now, if the employer articulation were simply suspected drug diversion, in your view, do you continue to have a case? Yes, and I think what we do is we look at- I'm not interested in the facts. I'm interested in the legal conclusions as to this question. Of course, I'm interested in the facts, and we've read very closely what you've done. But if you have a reasonable suspicion of drug diversion, wouldn't that warrant a separation of a nurse from your employment? Well, to answer that question, Your Honor, what we should do and what case law does is look at how the facility treats other similar situations. In this particular case, the plaintiff had gone to Gupto four times bringing concerns about nurse Doobie with suspicion of drug diversion. And yet after each- Suspicion of drug diversion? Correct. I thought the complaints made that she says that she made were about drug use, not about drug diversion. Drug use and drug diversion. Right. Because at one point there was some oxy which was taken. So if we compare the two situations with regard to nurse Doobie, no action taken. So the best way to look to see what the practice is, look what the facility did. In that particular case, they did nothing. So your case then depends upon dissimilar treatment of similarly situated nurses? No, Your Honor. This is a case which involves the totality of the evidence. We've presented eight separate types of evidence which taken together could allow a trier fact to reasonably infer- If, in fact, the two nurses are dissimilarly situated, the one she complained about and your client, then what is left of your case? This isn't a question of eight types of evidence. This is a legal question. Well, a legal question involving evidence, ways to establish a triable issue of fact, and we've presented eight different types of evidence recognized by case law to be evidence from which a jury can look and conclude pretext. From the fact that they dissimilarly treated people who either are similarly situated or not. That's only one of the factors, Your Honor. The other would be Murray's testimony. The other is the temporal link. Only four days between her last complaint and her termination. Did you make this disparate treatment argument in the district court that these two employees were similarly situated and treated disparately? We argued disparate treatment in terms of how they responded. No, I realize you say that she jumped right on this and she hadn't responded the same way in Dubie, but I don't recall anything in the district court record that indicates you made the argument that I think you're making to Chief Judge Lynch now that they treated two similarly situated employees in disparate ways. We did, and, in fact, we didn't even limit it to Dubie. There was also a nurse, Campbell, who had given patient number two oxycodone the night before, and patient two, who had cognitive ability or cognitive problems, testified he didn't receive it. So now you have two nurses who allegedly did not receive, did not give the oxycodone, but the only one to face any kind of investigation was our client. Your client signed a consent agreement before a nursing board in which she acknowledged she kept poor records, and this she more or less reaffirmed in her deposition, which she admitted to sloppy record-keeping as a bad habit. Now, Duke Till reviewed these records and found that this type of evidence indicates, raises a suspicion of drug diversion, and isn't that sufficient? And the rules of kindred is that under those circumstances they can terminate the nurse. Well, the problem is there's a conflict of evidence on that. When you look at how they treated Dubie and treated the others, they say one thing, but yet they do another. What if it was sufficient to find that she was engaging, or at least suspected, it was valid evidence of this suspicion according to their policies? It was evidence of suspicion to investigate, but once the investigation was done, a jury could look at it and say there's nothing here. There's nothing here to sustain your finding for your termination, and that's the tribal issue of fact. The company has a rule that when they suspect you of diversion that they will terminate you. Isn't that sufficient? I'm sorry? As I read the record, maybe I may be wrong. As I understand the record, the company had a policy that when they suspect a nurse of drug diversion, they will terminate. Isn't that sufficient as far as their ability to terminate your client? That is their stated rule, but they fired her claiming that she actually, in fact, diverted drugs. And the evidence is clearly in conflict on that issue. And then in terms of how they actually put their policy into practice, that is in dispute. All you have to do is look at the way Murray was treated in comparison to the other nurses. I think we understand your argument. Thank you. Mr. Irwin. Thank you, Your Honor. May it please the Court, James Irwin for Kindred. This case illustrates why this Court has drawn a line between employment cases involving the question of causation and animus. It's drawn a clear line between cases that are based on reasonable inference supported by proven fact on the one hand and cases which are based on unsupported inference, conclusory allegation, and speculation. In this case, the claim by Ms. Murray is that her termination came about because she reported suspected drug use by Nurse Doobie and that the narcotic diversion suspicion found by the administrator, Guptill, was actually a sham. That claim, we would argue, is a chimera. It falls apart and it falls clearly on the speculation side of this line that the Court has set between reasonable inference and speculation. The District Court was correct in granting summary judgment because the evidence of causation does not support the inference of retaliatory animus. I note briefly here that because this case arises under the Maine Human Rights Act and the Maine Whistleblower Protection Act, the causation standard is but-for causation. So that means that an appellant would have needed to produce evidence from which a reasonable jury could conclude that but-for her report to Guptill about Doobie, she would not have been terminated. And obviously our view is that she can't meet that burden. What's the point at which we look at this? I gather from your brother's argument that I take some indication that he seems to think that we should look at this as of the time of the report and that we can infer pretext merely from the fact that Guptill made a diligent investigation. I had always thought that we look at this but-for causation at the time of the firing, that is, after Guptill completed her investigation and asked the question whether this nurse would have been fired in light of the results of that investigation if she hadn't complained about Doobie. Well, I believe that's correct, Your Honor. I think you have to look at what was in the mind of Guptill when she made the decision to terminate. So that means all of the evidence relating to the poor documentation that led to her suspicion about drug diversion. And it also includes what the plaintiff has put forward, taken in the light most favorable to the plaintiff, as evidence to suggest that her reports about Doobie were in some fashion- But if that's so, why are you relying on evidence that she entered into a plea agreement with the state later on? It would seem that the decision-maker, of course, didn't know that at the time. It's correct. The decision-maker would not have known that. The purpose of that is simply to-it's essentially an admission by her. And the fact that it's an after-the-fact admission shouldn't change the fact that it's- It might go to a Mount Healthy type case. I'm sorry?  I apologize, Your Honor. The same outcome would have been reached anyway. Exactly. I mean, the outcome already had been reached. So it's a buttress, but granted, it was not part of the record that Guptill had at the time she made her decision. Let me ask you one thing that's puzzled me about this case. What is there in the record that shows any reason why Guptill might have gone to these kind of lengths, that is, orchestrating this elaborate pretext, simply because she resented the complaints about Doobie? Is there anything in the record that shows any special relationship between Guptill and Doobie or any investment by Guptill in Doobie as a person or as an employee? I'm certainly not aware of any, Your Honor. The plaintiff has pointed to what she in her own words said was speculation that Guptill may have wanted to keep Doobie around because she was the only supervisor for the second shift. But as the district court noted with respect to that fact below, it's admitted speculation. There was no evidence presented in the record to show that she was, in fact, the only nurse available to serve as a supervisor on the second shift. So it was really not of evidentiary quality and would not have been really relevant or pertinent to this question. So beyond that, there is no evidence to suggest that there's any special relationship between Doobie and Guptill. And the same is true. Ms. Loringer argued that there was evidence to suggest that Nurse Gage, who was the one that came forward initially, who started this chain of events by discovering what she thought was an irregularity with respect to resident one, there's no evidence of a special relationship between her and Doobie either. And so there's just no chain here to link together this claim of trying to protect Doobie with what happened. Counsel, if you read this record with all of these accusations of drug diversion, of drug use, you might become very worried about patients in nursing homes. Is this a constant problem that nursing home management faces? Well, I would say this, Your Honor. I would say that the diversion of narcotics is something that nursing homes are very concerned about, very diligent about, and, in fact, it is an ongoing challenge. It's not something that happens... How does the state interact with these private nursing homes to regulate this? Well, what the state does is that the state will periodically do inspections, review records, call irregularities or concerns to the attention of the facility. They may put a condition on their license that they have to correct the irregularity that's been found and demonstrate they've done that. Does the state have an obligation to report to the state if it has let go a worker because of suspicions of... Right. There were two reporting obligations here. One was to the licensing authority, which is the Department of Health and Human Services, and the second was to the nursing court. So they had two obligations to the court, which they did. Okay. If the court is to decide that the district court below made a mistake and decide that this case should go to a jury, which I certainly don't believe should happen, I just wanted to touch briefly on the issue of judicial estoppel, which is an unusual issue, but one this court has dealt with before, and we believe that the court below was mistaken. You mean the plaintiff failed to disclose in her bankruptcy that she had a claim in court, which is a form of property. Right. And the district judge ruled against you on the basis that that was essentially an equitable remedy for the court and you hadn't shown prejudice, and he was not convinced that this was a deliberate malicious act on her part. Right. So what's wrong with the district court's ruling? Right. And our point simply is that we think the court applied the... Again, you may not reach this issue, and I hope you don't, but the court applied the law incorrectly because it created a burden of showing deliberate dishonesty, which is, in fact, not an element of judicial estoppel, and it placed great emphasis on the lack of unfair advantage against my client. My client's role in this is irrelevant. The issue is protecting the integrity of the court against people taking inconsistent positions, which is what this is all about. And the case law in this circuit, and particularly in the Fifth Circuit, there's a case right on fours with this, the Robinson case, which we've cited, where a Chapter 13 debtor brought an employment claim without reporting it on her schedules and was stopped from doing so on very similar facts. So for that reason, if the court gets there, I would urge you to rule that this case should have been subject to judicial estoppel. If there are any more questions, I'll conclude. No, I just want to give you just a piece of advice. Save yourself some filing fees and some time. The cross-appeal in this case was totally unnecessary. You can challenge or support, excuse me, you can support the district court's judgment on any alternative ground made manifest by the record. So all you had to do was argue judicial estoppel as an alternative basis for affirmance. You didn't have to take a separate appeal. Thank you, Your Honor. I appreciate that. I think we found that there was at least some question about that in the case law. I have a vague recollection of those days. Thank you. All rise.